IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| SEAN LALLY, | CIVIL DIVISION |
| Plaintiff, | Case No. 2:24-cv-1300 |
| v. | |
| WESTMORELAND COUNTY, | |
| Defendant. | |

**COMPLAINT AND JURY DEMAND**

A. *Preliminary Statement*

1. The plaintiff Sean Lally brings this action under the Americans with Disabilities Act of 1990 (the "ADA"), 42 U.S.C. § 12101 *et seq.,* to redress violations of his right to be free from employment discrimination based upon his disability. Because of the violations described herein, this Court is also empowered to exercise pendant jurisdiction pursuant to the Pennsylvania Human Relations Act ("PHRA"), 43 P.S. § 951 *et seq.* A jury trial is demanded.

B. *Jurisdiction*

2. The jurisdiction of this Court is invoked pursuant to 42 U.S.C. § 12117(a), 28 U.S.C. § 1331 and under the doctrine of pendant jurisdiction.

3. On or about May 16, 2024, the plaintiff filed a timely charge alleging discrimination with the Equal Employment Opportunity Commission ("EEOC"), docketed at 553-2024-02018. This charge was simultaneously cross-filed with the Pennsylvania Human Relations Commission.

4. The EEOC issued a Notice of Right to Sue dated August 5, 2024.

5. The plaintiff filed this complaint within 90 days of receipt of the Notice of Right to Sue.

C. **_The parties_**

6. The plaintiff is an adult individual who resides in New Stanton, Westmoreland County, PA 15672.

7. The defendant Westmoreland County (the "County") is a political subdivision of the Commonwealth of Pennsylvania doing business in the Commonwealth of Pennsylvania, and, specifically, in this district. The defendant has a place of business located at 40 N. Pennsylvania Avenue, Greensburg, Westmoreland County, PA 15601.

8. At all times material, the defendant employed more than fifteen employees.

9. The defendant was the plaintiff's employer and is an employer within the meaning of the ADA, 42 U.S.C. § 12111(5).

D. **_Factual Background_**

10. The plaintiff, worked for the County, specifically the Children's Bureau of the Human Services Department, from March 18, 2024 to April 19, 2024, at which time the plaintiff was terminated.

11. The plaintiff was employed as a caseworker.

12. During the time he was employed, the plaintiff was competent and proficient at performing his job duties, and, in that regard, was considered to be a good employee.

13. The plaintiff has disabilities as defined by the Americans with Disabilities Act ("ADA") and/or was perceived by the employer as having disabilities. Specifically, the plaintiff is a left leg amputee. He wears a prosthetic and uses a crutch to ambulate. The plaintiff's disability is a physical impairment that substantially limits one or more of his major life activities.

14. The plaintiff was able to perform all the essential functions of his job with no accommodations or with minimal accommodations.

15. At all times relevant, the management and employees of the County were aSlonceski of the plaintiff's disabilities.

16. At all times relevant:

    (a) Kim Harmon was a supervisor.

    (b) Nick Purnell was the treatment manager.

    (c) Jason Slonceski was the assessment manager.

    (d) Tara Lorenzo was a caseworker.

    (e) Michelle Hernandez was a caseworker. She is the plaintiff's fiancé.

17. From the outset of his employment, Harmon was obviously discomfited and bothered by the fact that the plaintiff had a prosthetic and used a crutch to get around. She treated him differently than similarly situated new hires. Some examples of her disparate treatment follow (this is not an exhaustive list):

    (a) Harmon did not show the plaintiff around the office and introduce him to staff members like she did with similarly situated new hires.

    (b) Harmon did not provide the plaintiff with a computer and cell phone and did not provide him with assistance in setting up employee accounts like she did with similarly situated new hires.

    (c) Harmon did not assign a caseworker to take the plaintiff into the field to observe as part of the training process like she did with similarly situated new hires.

    (d) Similarly situated new hires had their picture taken which was then emailed to all staff by way of introduction. Harmon took the plaintiff's photograph but did not send it to staff members.

    (e) The only training that the plaintiff received was being given a training manual to read in the office. Harmon personally assisted other new hires, answered questions and sent them out into the field as part of the training process. The plaintiff was not afforded any of these opportunities.

(f) Similarly situated new hires were assigned cases to work on; some of them had as many as seven. However, Harmon did not assign the plaintiff any cases during the time he was employed.

(g) Harmon was very cordial with the other new hires. She often greeted them by name and said hello to them in the morning. With the plaintiff, Harmon turned a cold shoulder. She never greeted him and would simply walk past him in the morning without acknowledging his presence.

(h) On the occasions when Harmon had to interact with the plaintiff, she would walk in front of him so quickly that he could not keep up with her. She would stop and turn around as the plaintiff struggled to catch up and get irritated at him. With other new hires, she walked at a normal pace.

(i) Some of the new hires were given permission to work overtime as the situation dictated. However, Harmon specifically told the plaintiff that he was not permitted to work any overtime whatsoever and that the County would not pay him for any overtime hours that he logged.

(j) Harmon micro-managed the plaintiff's work, something that she did not do to similarly situated new hires. She told the plaintiff that she wanted to know where he was "every minute" and that he needed to ask her in advance if he wanted to do something beyond reading the manuals.

18. It was obvious that the plaintiff has a prosthetic because it is much narrower than his right leg. Therefore, it is noticeable even when the plaintiff does not wear shorts. Further, the prosthetic sometimes makes a squeaking or creaking noise as the "joints" bend. Harmon constantly stared at his left pant leg when she was around him, which made the plaintiff feel very uncomfortable.

19. On or about March 25, 2024, Harmon asked the plaintiff, "When are you going to walk normally again?" That comment, together with Harmon's treatment of him led the plaintiff to the conclusion that Harmon had a stereotypical belief that an amputee could not perform work like non-disabled individuals.

20. Shortly after that encounter, the plaintiff requested that he be assigned another supervisor. He spoke to Purnell about his request. The plaintiff told Purnell that he was not

getting the proper training under Harmon and that she exhibited a bias against him. Purnell seemed genuinely concerned. He told the plaintiff, "let's give it another month and if things don't change by then, we'll take another look at it."

21. As of approximately April 1, 2024, the plaintiff was still reading manuals at his desk during the day. He had only gone into the field one time, with Lorenzo. He did not yet have any cases assigned to him.

22. The plaintiff attended a foundational class offered by the University of Pittsburgh, called "Back to Basics" from approximately April 11 through April 12, 2024. During this two-day seminar, he learned from his peers (in Westmoreland, Fayette, Green and Venango Counties) that they all had cases assigned to them already. On or about April 15, 2024, talked to Harmon about the seminar and about the fact that newly hired caseworkers had been assigned cases but he had not been assigned any yet. Harmon said, "Well, I don't control what other counties do." The plaintiff pointed out that Westmoreland County caseworkers had been assigned cases." She did not respond to the plaintiff's point and did not attempt to dispute the fact. He asked if he could go out with any caseworker to apply the knowledge that he had been gaining by reading the manuals. Harmon seemed frustrated with the plaintiff's request and said, "You can only go out with Tara [Lorenzo], no one else." The plaintiff knew that Lorenzo typically did field work after regular business hours, which would require the plaintiff to put in for overtime, which he was specifically prohibited from doing. He told Harmon that this really limited his opportunities to learn. Harmon gave a derisive snarl and refused to engage in further conversation about the matter.

23. On April 16, 2024, the plaintiff experienced asthma attacks and could not work. He was told to call off through the agency's phone number and then to text Harmon to advise her that he was not able to work that day. The plaintiff complied.

24. The plaintiff was concerned about being alone that day, if he had another asthma attack. The plaintiff's fiancé, Hernandez, had an appointment in Clarion for a case that she was working on. He asked if he could ride with her in the car because he did not want to be alone. She agreed. When they arrived at the hospital, Hernandez went to her appointment. The plaintiff had intended to wait for her in the car (the appointment was only supposed to last for 10 to 15 minutes). He ended up going into the hospital because he had to go to the bathroom. He started struggling to breathe once he got inside. A charge nurse noticed that he was having a problem and she told him to come back to her unit so that she could do a quick assessment. She checked his vitals and, by then, the plaintiff regained his breath, so he left. By this time, Hernandez was done with her appointment and they returned to the car.

25. On approximately April 17, 2024, Harmon told the plaintiff to fill out his timesheet for the day and put down "sick leave" as the reason why he did not work. He told her that he had not yet accumulated enough sick time, she told him to "just put it down and payroll will figure it out." Upon information and belief, Harmon had found out that the plaintiff had gone to the hospital with Hernandez and was setting him up for termination.

26. On approximately April 19, 2024, the plaintiff was working from home. Harmon contacted the plaintiff and instructed him to come to the office with his laptop, "because IT needed to do some updates" on it. When the plaintiff arrived, he was taken to the Human Resources department. Present in the room were Purnell, Slonceski, Harmon and a HR representative. Slonceski said, "Let's get right to the point" and handed the plaintiff termination

papers.  The termination letter stated:  *The reason for your dismissal is as follows:  Working while off sick and termination of county probation.*  The plaintiff tried to explain that he did not work on April 16 and that, in any event, he did not have any cases assigned to him that he could have been working on.  He also tried to explain the issue regarding the fact that he did not have enough sick time accrued yet and why he had filled out the time sheet the way he did.

27. Slonceski angrily interrupted the plaintiff, put his hand up to the plaintiff's face and said, "We don't want people like you here."  Harmon escorted the plaintiff to his desk and told him that he had five minutes to get his belongings.  She then escorted him to the door.

28. The reasons given by the County for the plaintiff's termination was a pretext.  The real reason he was fired was because of his disability.

## FIRST CAUSE OF ACTION

29. The preceding paragraphs are incorporated herein by reference as if they were set forth at length.

30. The plaintiff has a disability and thus is protected against discrimination under the ADA.

31. The plaintiff was qualified for his position.

32. At all times relevant, the defendant knew of the plaintiff's disability and/or regarded the plaintiff to be a disabled individual.

33. The plaintiff was able to perform the essential functions of his job with or without a reasonable accommodation.

34. Despite his qualifications, the plaintiff was terminated.  The reasons given for his discharge were a pretext.

35. The defendant's discharge of the plaintiff was because of his disability, in violation of the ADA.

36. The defendant's violation of the ADA was committed with intentional or reckless disregard for the plaintiff's federally protected right to work in an environment free of discrimination.

## SECOND CAUSE OF ACTION

37. The preceding paragraphs are incorporated herein by reference as if they were fully set forth herein.

38. As a direct and proximate cause of its actions, detailed above, the defendant has violated the plaintiff's right to be free from discrimination under the Pennsylvania Human Relations Act, 43 Pa. C.S.A. § 951 *et seq.*

WHEREFORE, the plaintiff respectfully requests judgment be entered in his favor and against the defendant and that the defendant be required to provide all appropriate remedies under the ADA and the PHRA, including attorney's fees and costs.

Respectfully submitted,

*/s/ Michael J. Bruzzese*
Michael J. Bruzzese
Pa. I.D. No. 63306
220 Koppers Building
436 Seventh Avenue
Pittsburgh, PA 15219
(412) 281-8676

Counsel for the plaintiff

Dated: September 13, 2024